**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| CHRISTINE ALLEN-BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | **COMPLAINT** |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., | ) | **Jury Demand Endorsed Herein** |
| | ) | |
| and | ) | |
| | ) | |
| TRANS UNION, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MIDNIGHT VELVET, INC., | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW Plaintiff, Christine Allen-Brown, by and through undersigned counsel, and for her Complaint against the Defendants, Equifax Information Services, LLC, Experian Information Solutions, Inc., Trans Union, LLC, and Midnight Velvet, Inc., she states and avers as follows:

**INTRODUCTION**

1.      This is an action for actual, statutory and punitive damages brought by Plaintiff against Defendants for the willful, knowing, and/or negligent violation of, *inter alia*, Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the *Fair Credit Reporting Act* ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## PARTIES

2.    Christine Allen-Brown ("Plaintiff") is a natural person that resides in Cincinnati, Ohio.

3.    Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

4.    Equifax Information Services, LLC ("Equifax") is foreign limited liability company that regularly transacts business in Ohio through its registered agent, Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

5.    Equifax is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

6.    Experian Information Solutions, Inc. ("Experian") is a domestic corporation that regularly transacts business in Ohio through its registered agent, CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

7.    Experian is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

8.    Trans Union, LLC ("Trans Union") is foreign limited liability company that regularly transacts business in Ohio through its registered agent, The Prentice-Hall Corporation System, Inc., 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

9.    Trans Union is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

10.    Midnight Velvet, Inc. ("Midnight Velvet") is a retail shopping website that offers financing options for its consumers.

11.    Midnight Velvet is a foreign corporation based in Wisconsin that regularly transacts business with Ohio consumers.

12.    Midnight Velvet is a furnisher of information as contemplated by the FCRA, 15 U.S.C. §

1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681*p*.

14.     Venue in this District is proper because Plaintiff resides in this District, Defendants transact business in this District, and the conduct complained of occurred in this District.

## BACKGROUND AND FACTUAL ALLEGATIONS

15.     In early 2016, Plaintiff decided she was ready to start a new chapter in her life and wanted to purchase a new home.

16.     She began speaking with Gateway Mortgage Group, LLC, a mortgage lender in the Cincinnati, Ohio area about a new home purchase.

17.     On or about July 11, 2016, she submitted an application for financing.  She was very excited to move forward and start a new life with her daughter and granddaughter.

18.     Unfortunately, her application was denied because her credit score was too low for her to be eligible for financing.

19.     Plaintiff was heartbroken.  She was certain that she was financially responsible enough to deserve this home loan.

20.     On or about July 22, 2016, she obtained a copy of her credit report to try and understand why her credit score was so low.

21.     Plaintiff was shocked and dismayed to discover that an account with Midnight Velvet, an online clothing retailer, was reporting derogatory information on her credit reports with the three major consumer reporting agencies, Equifax, Experian and Trans Union ("the CRAs").

22. Plaintiff never opened an account with Midnight Velvet, nor does she ever recall even visiting its website.

23. In an effort to minimize any damage from what she believed must be a simple mistake, on or about July 28, 2016, Plaintiff contacted the CRAs by letter to dispute the false information and request removal of the Midnight Velvet account.

24. Pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, the CRAs were then required to reasonably investigate Plaintiff's dispute, as well as forward copies of Plaintiff's dispute letters to Midnight Velvet.

25. Pursuant to 15 U.S.C. § 1681s-2(b) of the FCRA, Midnight Velvet was then obligated to investigate the disputed information for accuracy, and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

26. All three CRAs responded to Plaintiff by letters stating they "verified" the accuracy of the disputed information and it would remain on Plaintiff's credit reports.

27. Around this same time, Plaintiff was in contact with Midnight Velvet about the inaccurate account.

28. Midnight Velvet acknowledged that the account did not belong to Plaintiff and instead belonged to a "Cedric Allen" located in Kentucky.

29. Plaintiff does not know anyone named "Cedric Allen" nor has she ever resided in Kentucky.

30. Midnight Velvet advised they would request removal of the account from the CRAs. Plaintiff cautiously trusted and believed that the matter would be taken care of.

31. Wanting to stay vigilant about making sure this false information was removed from her credit history, Plaintiff obtained another copy of her reports on or around August 26, 2016.

32.     Plaintiff was discouraged and dismayed to find the derogatory Midnight Velvet account was still listed on her credit reports with all three CRAs.

33.     Plaintiff was confused why Midnight Velvet had promised to fix this problem, yet it was still on *all* of her credit reports. Did Midnight Velvet actually contact the CRAs as promised? Or were the CRAs ignoring the problem? Plaintiff was frustrated that she had no way of knowing, and in the meantime, she was still being strapped with someone else's negative credit.

34.     Nevertheless, Plaintiff refused to give up, and on or about August 26, 2016, she sent another letter to each of the CRAs again disputing the Midnight Velvet account.

35.     Confusingly, the CRAs responded once again with written letters stating the account was "accurate" and would stay on her credit report.

36.     Plaintiff was extremely confused. She had received confirmation from Midnight Velvet that the account was not hers and, in fact, belonged to someone with an entirely different name (and gender) living in another state. How and why would this account be allowed to stay on Plaintiff's credit reports? Was Midnight Velvet telling the CRAs incorrect information? Were the CRAs ignoring her letters? Was anyone paying attention to Plaintiff's disputes?

37.     Plaintiff, now discouraged and angered that this patently false information is being allowed to stay on her report, sent the CRAs additional letters in October 2016, and January 2017, pleading that the derogatory Midnight Velvet account be removed.

38.     However, each time the CRAs responded to the dispute letters stating that Midnight Velvet had verified the accuracy of the disputed information and the account would remain unchanged.

39.     After contacting Midnight Velvet and the CRAs repeatedly to fix this issue to no avail, Plaintiff is at a loss as to how to follow, let alone combat, the CRAs' logic in allowing someone else's bad credit to remain in Plaintiff's credit report.

40.     The CRAs have complete control over the credit picture they paint of Plaintiff, and yet they refuse to correct an objectively false error.  Plaintiff feels helpless and hopeless as to what else she can do.

41.     Plaintiff fears that she will not be able to obtain an accurate credit report, and so, will continue to be denied her chance to buy a new home.  This has imposed upon Plaintiff great sadness and frustration, as well as anger and disgust.

42.     Plaintiff also finds it profoundly unfair that Midnight Velvet can allegedly "verify" false information, and the CRAs continue to let them do it.

43.     Plaintiff has lost all trust in the credit reporting system, and believes that litigation is her only option to fix her credit reports.

## FIRST CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Equifax

44.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

45.     A "consumer reporting agency" is defined by the FCRA as follows:

46.     [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.  15 U.S.C. § 1681a(f).

47.     Equifax is a "consumer reporting agency" as defined by the FCRA.

48.     Section 1681n of the FCRA imposes civil liability on any entity "who willfully fails to comply with any requirement" of the Act.  *See* 15 U.S.C. § 1681n(a).

49.     Section 1681o of the FCRA provides for civil liability against any entity that is negligent in failing to comply with any requirement imposed under the Act.

50.     The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681*i*(a)(1).  The Act imposes a 30-day time limitation for the completing of such an investigation.  *Id.*

51.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681*i*(a)(5)(A).

## Equifax's Reasonable Reinvestigation Violations

52.     By letters dated July 28. 2016, August 26, 2016, October 26, 2016, and finally on January 24, 2017, Plaintiff disputed the false Midnight Velvet account information appearing on her Equifax credit report.

53.     Plaintiff specifically advised Equifax that a mistake had been made, provided all necessary information to Equifax to support same, and requested the trade line be deleted accordingly.

54.     Either Equifax conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

55.     By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

56. As a direct and proximate result of Equifax's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

57. As a direct and proximate result of Equifax's willful and/or negligent refusal to delete false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

58. Upon information and belief, Equifax has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

59. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

## Equifax's Failure To Follow Reasonable Procedures
## To Assure Maximum Possible Accuracy

60. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

61.     On numerous occasions, Equifax has prepared a patently false consumer report concerning Plaintiff.

62.     Despite actual and implied knowledge that the Midnight Velvet account did not belong to Plaintiff, Equifax readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Equifax reported.

63.     On each such instance, Equifax willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

64.     Through Plaintiff's communications with Equifax, Equifax knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff.  Nevertheless, Equifax took no measure to stop painting a false and damaging picture about Plaintiff.

65.     Upon information and belief, Equifax also knew, or had sufficient reason to know, from its communications with Midnight Velvet that the account being disputed by Plaintiff belonged to someone with a different first and last name, of a different gender, who lived in a different state than Plaintiff.  It is patently unreasonable for Equifax to have allowed this information to have been mixed or merged into Plaintiff's credit file in the first place.

66.     Plaintiff has suffered out-of-pocket loss as a result of Equifax's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Equifax's pockets.

67.     As a direct and proximate result of Equifax's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such

as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

68.     Upon information and belief, Equifax has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including improperly mixing and/or merging information of more than one person into a consumer's credit file, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

**69.**     Equifax's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Equifax, and for the following relief:

(a)     Actual damages sustained;

(b)     Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)     Punitive damages in an amount to be determined by the jury;

(d)     Reasonable attorneys' fees and costs; and

(e)     Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 U.S.C. § 1681*i* and e(b) by Experian

67.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully

rewritten here.

**Experian's Reasonable Reinvestigation Violations**

68.     By letters dated July 28. 2016, August 26, 2016, October 26, 2016, and finally on January 24, 2017, Plaintiff disputed the false Midnight Velvet account information appearing on her Experian credit report.

69.     Plaintiff specifically advised Experian that a mistake had been made, provided all necessary information to Experian to support same, and requested the trade line be deleted accordingly.

70.     Either Experian conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

71.     By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Experian willfully and/or negligently violated 15 U.S.C. § 1681$i$(a)(1).

72.     As a direct and proximate result of Experian's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

73.     As a direct and proximate result of Experian's willful and/or negligent refusal to remove false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

74.      Upon information and belief, Experian has exhibited a pattern of refusing to correct

consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

75.     Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681$n$.

### Experian's Failure To Follow Reasonable Procedures To Assure Maximum Possible Accuracy

76.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

77.     On numerous occasions, Experian has prepared a patently false consumer report concerning Plaintiff.

78.     Despite actual and implied knowledge that the Midnight Velvet account did not belong to Plaintiff, Experian readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Experian reported.

79.     On each such instance, Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

80.     Through Plaintiff's communications with Experian, Experian knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff.  Nevertheless, Experian took no measure to stop

painting a false and damaging picture about Plaintiff.

81.     Upon information and belief, Experian also knew, or had sufficient reason to know, from its communications with Midnight Velvet that the account being disputed by Plaintiff belonged to someone with a different first and last name, of a different gender, who lived in a different state than Plaintiff.  It is patently unreasonable for Experian to have allowed this information to have been mixed or merged into Plaintiff's credit file in the first place.

82.     Plaintiff has suffered out-of-pocket loss as a result of Experian's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Experian's pockets.

83.     As a direct and proximate result of Experian's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

84.     Upon information and belief, Experian has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including improperly mixing and/or merging information of more than one person into a consumer's credit file, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

Experian's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory

damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Experian, and for the following relief:

(a)     Actual damages sustained;

(b)     Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)     Punitive damages in an amount to be determined by the jury;

(d)     Reasonable attorneys' fees and costs; and

(e)     Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## THIRD CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Trans Union

85.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

### Trans Union's Reasonable Reinvestigation Violations

86.     By letters dated July 28. 2016, August 26, 2016, October 26, 2016, and January 24, 2017, Plaintiff disputed the false Midnight Velvet account information appearing on her Trans Union credit report.

87.     Plaintiff specifically advised Trans Union that a mistake had been made, provided all necessary information to Trans Union to support same, and requested the trade line be deleted accordingly.

88.     Either Trans Union conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

89.     By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

90.     As a direct and proximate result of Trans Union's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

91.     As a direct and proximate result of Trans Union's willful and/or negligent refusal to remove false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

92.     Upon information and belief, Trans Union has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

93.     Trans Union's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**Trans Union's Failure To Follow Reasonable Procedures
To Assure Maximum Possible Accuracy**

94.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

95.     On numerous occasions, Trans Union has prepared a patently false consumer report concerning Plaintiff.

96.     Despite actual and implied knowledge that the Midnight Velvet account did not belong to Plaintiff, Trans Union readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Experian reported.

97.     On each such instance, Trans Union willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

98.     Through Plaintiff's communications with Trans Union, Trans Union knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, Trans Union took no measure to stop painting a false and damaging picture about Plaintiff.

99.     Upon information and belief, Trans Union also knew, or had sufficient reason to know, from its communications with Midnight Velvet that the account being disputed by Plaintiff belonged to someone with a different first and last name, of a different gender, who lived in a different state than Plaintiff. It is patently unreasonable for Experian to have allowed this information to have been mixed or merged into Plaintiff's credit file in the first place.

100.    Plaintiff has suffered out-of-pocket loss as a result of Trans Union's willful and/or

negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Trans Union's pockets.

101.   As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

102.   Upon information and belief, Trans Union has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including improperly mixing and/or merging information of more than one person into a consumer's credit file, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

103.   Trans Union's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Trans Union, and for the following relief:

(f)     Actual damages sustained;

(g)     Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(h)     Punitive damages in an amount to be determined by the jury;

(i)     Reasonable attorneys' fees and costs; and

(j)     Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## FOURTH CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 U.S.C. § 1681s-*2* by Midnight Velvet

104.   Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

105.   Midnight Velvet is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

106.   Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681s-2(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported about them by the furnisher.

107.   On at least four (4) occasions, namely July 28. 2016, August 26, 2016, October 26, 2016, and January 24, 2017, Plaintiff contacted the CRAs specifically to dispute the accuracy of the derogatory Midnight Velvet account being reported about her.

108.   Plaintiff specifically advised the CRAs on each occasion that the information being reported was false, provided all necessary information to the CRAs to support her dispute, and requested the false information be deleted accordingly.

109.   Upon information and belief, and pursuant to 15 U.S.C. § 1681i(a)(2), Midnight Velvet received notification of these disputes from the CRAs.

110.   Nevertheless, on multiple occasions in the last two (2) years, the false Midnight Velvet account was allowed to remain on Plaintiff's credit report under the guise that Midnight Velvet had "verified" the information as true.

111.   Either Midnight Velvet conducted no real investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow confirmed information known to be false and highly damaging

to remain in Plaintiff's credit file.

112. Midnight Velvet's failures in this regard are exacerbated by the sheer number of times Midnight Velvet was contacted about this particular account.

113. Midnight Velvet's failures in this regard are exacerbated by the fact that Plaintiff personally contacted Midnight Velvet on numerous occasions to dispute this false information.

114. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Midnight Velvet negligently and/or willfully violated § 1681s-2(b)(1) with respect to each dispute lodged by Plaintiff.

115. As a direct and proximate result of Midnight Velvet's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681o.

116. Midnight Velvet's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Midnight Velvet, pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Midnight Velvet, and for the following relief:

(a)    Actual damages sustained;

(b)    Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)    Punitive damages in an amount to be determined by the jury;

(d)    Reasonable attorneys' fees and costs; and

(e)    Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable in this lawsuit.

Respectfully submitted,

 /s/ *Sylvia A. Goldsmith*
Sylvia A Goldsmith (#0064871)
**GOLDSMITH & ASSOCIATES, LLC**
20545 Center Ridge Rd., Suite 415
Rocky River, OH 44116
Telephone: (440) 934-3025
Facsimile: (440) 934-3026
E-mail: goldsmith@goldsmithlawyers.com

Andrew M. Esselman (*Pro Hac Vice* forthcoming)
CREDIT LAW CENTER
4041 NE Lakewood Way, Suite 200
Lee's Summit, MO 64064
Telephone: 816-246-7800
Facsimile: 855-523-6884
Email:  andrewe@creditlawcenter.com

*Counsel for Plaintiff Christine Allen-Brown*